UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-544-H

JOHN WHITE                                                                                           PLAINTIFF

V.

STRYKER CORPORATION, et al.                                                       DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, John White, filed this product liability action concerning injuries suffered from a medical device known as the Trident Hip Replacement System (the "Trident System"), which was surgically implanted on May 25, 2004, and removed five years later. Defendants, Stryker Corporation and How Medica Osteonics Corp. ("Stryker"), designed, manufactured and distributed the Trident System.

After Plaintiff filed his complaint in Jefferson Circuit Court, Stryker immediately removed to federal court and, a week later moved to dismiss on grounds that the Supreme Court has interpreted the Medical Device Amendments of 1976, 21 U.S.C. § 360c, *et seq.* ("MDA"), to the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, as expressly preempting claims such as these. In response, on October 1, 2010, Plaintiff moved for leave to file an amended complaint.[1] Stryker replied that under the standards of *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), even the Amended Complaint fails to state with specificity any plausible claims that avoid federal preemption.

This case raises interesting questions about the scope of MDA express preemption and

---

[1] The Court will sustain the motion for leave to amend and consider the Amended Complaint as governing the motions.

the specificity of pleading required to avoid it. However, the pleadings at issue here are so insufficient that, for the reasons that follow, the Court will sustain Stryker's motion and dismiss Plaintiff's claims.

I.

The actual pertinent allegations of the Amended Complaint, and those of the original complaint which is incorporated by reference, are extremely important.

The original complaint states that on May 25, 2004, Plaintiff underwent a total hip arthroplasty, a procedure that involves the implantation of the Trident System. More than five years later, on August 24, 2009, Plaintiff underwent additional surgery during which his physician discovered that certain ceramic component parts of the Trident System had failed. Paragraphs 7 through 14 of the original complaint make general allegations concerning the defectiveness and dangerousness of the design, manufacture, assembly, inspection, testing and marketing of the Trident System. No where does the original complaint make mention of federal regulations.

The Amended Complaint incorporates the factual allegations of the original and contains some new allegations. Paragraph 2 states that "defendants failed to manufacture [the Trident System] according to FDA approved standards and procedures for medical devices." Subsequent paragraphs assert the original causes of action and then add the same generic allegations concerning FDA standards and procedures. Paragraph 3 sets forth a negligence claim; Paragraph 4 sets forth implied and express warranty claims; Paragraph 5 sets forth a merchantability claim; and Paragraph 6 sets forth a strict liability claim. The Amended Complaint neither cites any particular federal standard or procedure, nor does it generally state how the alleged defect

deviated from a federal standard or procedure.

Only in the most general way possible does the Amended Complaint seek to limit its broad common law state claims to those circumstances founded upon alleged violations of "FDA approved standards."

II.

The process by which the Food and Drug Administration (the "FDA") approved the Trident System for manufacture and distribution is important because it provides the underpinning for the MDA's express preemption provision. The FDA exercises comprehensive authority over all medical devices intended for human use in the United States. *See* 21 U.S.C. § 360c, *et seq*. The most comprehensive summary of the overarching regulatory structure for devices such as the Trident System can be found in *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 108-111 (2nd Cir. 2006). Much of the following summary can be found there.

In 1976, Congress enacted the MDA in order to provide for the safety and effectiveness of medical devices intended for human use. Under the MDA's regulatory structure, medical devices are categorized into three classes, based on the level of risk that they pose. *See* 21 U.S.C. § 360c(a)(1). Those devices presenting minimal risks are placed in Classes I and II. *See* 21 U.S.C. § 360c(a)(1)(A) and (B). Those devices which either "present a potential unreasonable risk of illness or injury" or are "for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health" are classified as Class III devices. 21 U.S.C. § 360c(a)(1)(C). It is undisputed that the Trident System is a Class III device.

Prior to marketing and sale, a Class III device must undergo "premarket approval to

provide reasonable assurance of its safety and effectiveness." 21 U.S.C. § 360c(a)(1)(C). The premarket approval, or "PMA," process is considered lengthy and rigorous. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996) (describing the PMA process as a "rigorous one," and noting that the FDA spends an average of 1,200 hours on each PMA submission). The manufacturer must submit a detailed PMA application that contains: full reports of all investigations of the safety and effectiveness of the device; a full statement of the components, ingredients, properties, and principles of operation of the device; a full description of the methods used in the manufacture and processing of the device; information about performance standards of the device; samples of the device; specimens of the proposed labeling for the device; and any other relevant information. *See* 21 U.S.C. § 360e(c).

The PMA process envisions significant interaction between the FDA and the manufacturer. Typically, the initial PMA application must include data from clinical investigations to establish the safety and effectiveness of the device, 21 C.F.R. § 814.20(b)(6)(ii); the manufacturer cannot conduct such a clinical investigation in the first place without FDA permission, 21 C.F.R. § 812.1(a). The results of these clinical investigations are included in the PMA application, along with other information. *See* 21 C.F.R. § 814.20; 21 U.S.C. § 360e(c). The FDA then reviews the submission to determine whether it is sufficiently complete to enable a substantive review. 21 C.F.R. § 814.42. If so, the FDA begins its own review, which may involve referring the application to an advisory committee. *See* 21 C.F.R. § 814.44. Indeed, the FDA referred the Trident System application to the Orthopedic and Rehabilitation Advisory Committee on July 20, 2000.[2]

---

[2] *See* U.S. Food and Drug Administration, *Summary of Safety and Effectiveness Data*, at 16, *available at* http://www.accessdata.fda.gov/cdrh_docs/pdf/P000013b.pdf.

Once the FDA has concluded its review, it decides whether or not to approve the device for marketing. This choice is not binary; the FDA has means to impose additional requirements. For example, the FDA can issue an "approvable letter" stating that the FDA believes it will be able to approve the application if specific conditions are agreed to by the applicant. *See* 21 C.F.R. § 814.44(e). In the end, once the FDA has approved a medical device through the PMA process, the applicant is required to comply with the standards in the PMA approval order. 21 C.F.R. § 814.80.

The standard FDA "Conditions of Approval" accompanying a PMA approval order state that continued approval of the PMA "is contingent on the submission of postapproval reports required under 21 C.F.R. 814.84 at intervals of 1 year from the date of approval of the original PMA."[3] These reports must identify all manner of events and occurrences that could affect the device's safety or effectiveness. *See* 21 C.F.R. § 814.84(b)(1) and (2). The FDA also requires the manufacturer to submit an "Adverse Reaction Report" or "Device Defect Report" to the FDA concerning any occurrence adversely effecting the use, safety or maintenance of the device.[4] The FDA may also impose other requirements it "determines are necessary to provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." 21 C.F.R. § 814.82(a).

It is not exactly clear when Stryker initiated the PMA process for the Trident System. However, it may have begun as early as 1999. After the FDA referred the Trident System

---

[3] U.S. Food and Drug Administration, *PMA Conditions of Approval*, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarketYourDevice/PremarketSubmissions/PremarketApprovalPMA/ucm134504.htm (last updated Sept. 3, 2010).

[4] *See supra*, note 3.

5

application to the Orthopedic and Rehabilitation Advisory Committee on July 20, 2000, the Committee recommended denial of approval based on the lack of 24-month follow-up data from clinical trials.[5] The FDA did not agree with the Committee's non-approval recommendation. Consequently, it either performed or required additional studies. After several more years, in February of 2003, the FDA communicated that it approved the PMA application of the Trident System and that Stryker could commence commercial distribution of the device in accordance with certain normal "Conditions of Approval."[6]

Upon issuance of PMA approval, the FDA made publicly available a document entitled "Summary of Safety and Effectiveness Data" concerning the Trident System.[7] The document provides a significant amount of information concerning the Trident System , including the following: a description of the device; identification of certain contraindications, warnings and precautions necessary for the its use; a summary of the potential adverse effects from its use; a summary of all of the preclinical testing and studies of the device; conclusions regarding the risks and benefits of the device; and, finally, a summary of the FDA approval process. The report appears to be a comprehensive survey of the data surrounding and processes comprising the PMA process, which led ultimately to FDA approval.

III.

---

[5] *See supra* note 2, at 17.

[6] *See* U.S. Food and Drug Administration, http://www.accessdata.fda.gov/cdrh_docs/pdf/P000013a.pdf (the "Conditions of Approval" were general in nature and included requirements: (1) to seek approval before making any changes to the device or to its manufacturing processes; (2) to submit regular reports of new studies, reports or scientific literature concerning the device; (3) to make adverse reaction or device defect reports whenever the company learns of qualifying events; and (4) to report any new information reasonably suggesting that a device has malfunctioned, or has caused serious injury).

[7] *See supra* note 2.

Devices that receive the PMA and comply with its requirements are entitled to the benefit of the MDA's express preemption provision which prohibits a state from establishing or allowing "any requirement" relative to a medical device "(1) which is different from, or in addition to, any requirement applicable" under the MDA and "(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device" under the MDA. 21 U.S.C. § 360k(a). Not surprisingly, establishing the scope of this preemption has generated more debate and less consensus than one might have hoped.

The Supreme Court did provide some initial guidance in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008). First, it noted that the PMA process is designed to offer "reasonable assurance of the safety and effectiveness" of the device. *Id.* at 323. Bearing this in mind, the majority opinion sets out a two-step analysis for determining whether the MDA preempts a state law claim. The analysis asks: (1) whether the Federal Government has established requirements applicable to the device; and (2) whether the asserted common-law claims impose any state requirements regarding safety and effectiveness that are different from or in addition to those under the MDA. *Id.* at 321-22.

No one disputes that, for purposes of the preemption provision in § 360k(a), the FDA has established "requirements" for the Trident System. The Supreme Court views the extensive PMA process that all Class III devices must endure as imposing safety related "requirements" under the MDA because they are specific to individual devices. *Id.* at 322-23. Also, there seems to be no dispute that Plaintiff's common law claims do impose "state requirements" regarding safety and effectiveness. As a general matter, the Supreme Court said that common-law duties are "state requirements" for purposes of an MDA preemption analysis. *Id.* at 323-25. The

7

Supreme Court also attempted to clarify what it means for a state requirement to be "different from or in addition to" an MDA requirement. The Court said that state claims "premised on a violation of FDA regulations" are "parallel" claims, and do not impose requirements that are different from or in addition to federal requirements. *Id*. at 330. Therefore, § 360k(a) of the MDA does not preempt these parallel claims. The only issue left for the Court to determine is whether Plaintiff has established "parallel" claims.

It is clear that the seven Justices in the majority intended to give the MDA preemption provision a broad and powerful effect. Nevertheless, while establishing a framework for this broad preemption, *Riegel* also raised many new questions. Only in the last year have federal courts of appeals begun to review the practical efforts of district courts to resolve one of the major preemption questions arising since *Riegel*: What degree of particularity is required to establish a "parallel claim" and avoid preemption? In the context of a motion to dismiss, the answer requires ascertaining the proper relationship between *Riegel*, *Twombly,* and *Iqbal*.

IV.

To survive a motion to dismiss, a plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'" *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Id*. (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

In the context of MDA preemption, *Twombly* and *Iqbal* make a plaintiff's job more difficult than it would be in a typical product liability case. When facing MDA preemption, a

plausible cause of action requires, among other things, a showing that the alleged violation of state law parallels a violation of federal law. This additional step requires some greater specificity in the pleadings. However, our appellate courts have been unable to agree upon the precise level of that specificity. Nonetheless, in this Court's view, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A.

In the last seven months, five courts of appeals have addressed the issue at hand here. Some of these decisions are more helpful than others. Collectively, they present a range of approaches to the problem confronting the Court here. In the interest of completeness, the Court will review and comment on each in order of their appearance.

On June 16, 2010, the Sixth Circuit delivered the first glancing blow on the subject in *Howard v. Sulzer Orthopedics, Inc.*, 382 Fed. Appx. 436 (6th Cir. 2010) (unpublished).[8] A Class III knee device implanted in the plaintiff failed, and the plaintiff based his negligence per se claim on the allegation that the defendant violated federal regulations known as the Current Good Manufacturing Practices ("GMPs").[9] *Howard*, 382 Fed. Appx. at 439. The lower court determined that although the GMPs are incorporated into the PMA process, they impose no additional obligations beyond those specifically outlines elsewhere in the PMA process. *See Id*. As a result, it held that the MDA preempted the plaintiff's negligence claim because the

---

[8] In light of the fact that the opinion is unpublished, the Court can only assume that the panel did not intend this relatively straightforward treatment of a well known issue to become established Sixth Circuit precedent.

[9] The GMPs "are FDA regulations based upon manufacturing standards that apply to all FDA-regulated medical devices." *Howard*, 382 Fed. Appx. at 439; *See also* 21 C.F.R. § 820.1.

defendant complied with the specific PMA requirements and granted the defendant summary judgment. *See Id.* The Sixth Circuit vacated the summary judgment and remanded on the grounds that the particular GMP raised by the plaintiff did, in fact, impose an additional PMA requirement.[10] *See Id*. at 441-42. Although the court's opinion seems to be limited to the particular GMP at issue, this unpublished opinion suggests that alleging a violation of a sufficiently specific GMP amounts to alleging a parallel claim that escapes MDA preemption. Other courts have disagreed about whether GMPs are sufficiently device-specific to serve as the basis of a parallel claim. Regardless, unlike the plaintiff in *Howard*, Plaintiff here has not alleged the violation of a specific federal standard or even a GMP.

The Eight Circuit was next to address this issue. Last fall, it affirmed a multidistrict litigation court's dismissal of failure to warn, design defect, and manufacturing defect claims on the basis of express preemption. *See In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation*, 623 F.3d 1200 (8th Cir. 2010). In another divided opinion, the panel found that there is only a "narrow gap through which a plaintiff's state law claims must fit if it is to escape express implied preemption." *Id.* at 1204. With regard to all claims, the court found that the plaintiffs either failed to allege at all or did not allege with sufficient specificity a deviation from or violation of federal standards and regulations. *Id*. at 1205-07. Concerning the manufacturing claim in particular, it found that the plaintiffs had failed to identify specific PMA requirements. Disagreeing with *Howard*, the Eighth Circuit said that the more general GMPs were not specific enough to constitute a federal standard and thus establish a parallel claim for

---

[10] The particular GMP, 21 C.F.R. § 820.70(h), requires manufacturers to establish procedures concerning the use and removal of a potentially hazardous manufacturing material "to ensure that it is removed or limited to an amount that does not adversely affect the device's quality."

preemption purposes. *See Id.* at 1206-07. However, the Court acknowledged that the GMPs may be sufficient "in a case where a specific defective Class III device injured a consumer, and the plaintiff did not have access to the specific federal requirements in the PMA prior to commencing the lawsuit." *Id.* at 1206.

The Seventh Circuit has so far required the least amount of pleading specificity. *See Bausch v. Stryker Corp*, 630 F.3d 546 (7th Cir. 2010). *Bausch* actually involved the Trident System. The district court held that the MDA preempted a state law products liability claim and denied the plaintiff's motion to file an amended complaint. The *Bausch* panel reversed. Although the plaintiff's proposed amended complaint actually referenced a specific FDA regulation, the court made it clear that the plaintiff's original complaint identifying no particular federal regulation, not even a GMP, was sufficient. *Id.* at 559. The panel noted that some of the information necessary for a plaintiff to reference a particular regulation may be held by the defendant and that "formal discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the specific bases of his claim." *Id.* at 558. Plaintiff included several key facts in her original complaint, including: that the FDA investigated the Trident prior to plaintiff's surgery and issued a letter warning to the defendant that the manufacturing methods were not in conformity with regulatory standards; that the FDA's warning was for a Trident model bearing the same catalogue number as the one implanted in the plaintiff; and that the Trident implanted in the plaintiff was later recalled by the defendant. *Id.* at 559. The Court held that such facts made the plaintiff's "claim for relief 'plausible on its face' as required by *Iqbal* and *Twombly*." *Id*.

The Fifth Circuit next addressed the issue in a case that also involved the Trident System.

11

*See Funk v. Stryker Corp.*, No. 10-20022, 2011 U.S. App. LEXIS 1465 (5th Cir. Jan. 25, 2011). In a result similar to that in *Medtronic Sprint Fidelis,* the court affirmed the lower court's dismissal of plaintiff's state law manufacturing defect claim because the first amended complaint did not say "how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process." *Funk*, 2011 U.S. App. LEXIS 1465 at *11. The first amended complaint was generic and conclusory, just like the one in our case. However, the court suggested that the plaintiff's second amended complaint, which it never considered for procedural reasons, seemed to rectify the errors in the first amended complaint because it "cites the relevant FDA manufacturing standards Stryker allegedly violated." *Id*. at *11-12. A search of the docket in *Funk* reveals that the plaintiff's seconded amended complaint cited the less specific GMPs, not device-specific PMA standards.

The most recently decided appellate case, *Wolicki-Gables v. Arrow International, Inc.*, No. 09-14342, 2011 U.S. App. LEXIS 4596 (11th Cir. Mar. 8, 2011), set forth the standard requiring the greatest level of pleading specificity. In affirming the dismissal of state law claims for product liability and negligence on the grounds of preemption, the panel took an approach embraced by many district courts requiring a plaintiff to allege a specific PMA-specific regulation or standard violation.[11] It said that a plaintiff must specifically state parallel claims in the initial pleadings, and that "'[t]o properly allege parallel claims, the complaint must set forth facts' pointing to specific PMA requirements that have been violated." *Wolicki-Gables*, 2011 U.S. App. LEXIS 4596 at *13 (quoting *Parker v. Stryker Corp.*, 584 F.Supp.2d 1298, 1301 (D.

---

[11] See, e.g., *Ilarraza v. Medtronic, Inc.*, 677 F.Supp.2d 582, 589 (E.D.N.Y. 2009); *Parker v. Stryker Corp.*, 584 F.Supp.2d 1298, 1301 (D. Colo. 2008); *Rollins v. St. Jude Medical,* 583 F.Supp.2d 790, 799-800 (W.D. La. 2008).

Colo. 2008)). Analyzing generic and conclusory pleadings very similar to those in our case, the court determined that the plaintiffs' allegations did not establish parallel claims.

These cases reveal the different approaches to resolving MDA preemption issues, though one can overstate the differences. No doubt, specific factual and procedural differences among the cases partially explain the different results. Nevertheless, the circuits have disagreed on the degree of specificity required to establish a plausible claim. They differ about whether asserting the violation of a GMP is sufficient to avoid preemption. They disagree about the circumstances in which discovery should proceed before determining preemption. In our case, one must question whether any of these disagreements are consequential because Plaintiff has not alleged any specific manufacturing failure, has not alleged the violation of any specific federal standard, including GMPs, and has already amended his complaint once in response to the motion to dismiss.

B.

The Amended Complaint states only that a ceramic portion of the device had disintegrated. It asserts that Stryker designed, manufactured and distributed the Trident System. Otherwise, it contains only the most general allegations of product liability, negligence and warranty. It does not identify any particular design flaw, manufacturing impropriety or product defect. It does not assert either a PMA-specific standard or a GMP regulation, the violation of which might form the basis for a state law action. Rather, in a general manner it purports to limit otherwise broad state law claims only to those circumstances involving noncompliance with an FDA standard. In the face of the narrow pleading window required to avoid preemption, Plaintiff has done virtually nothing. Consequently, the Amended Complaint clearly does not

13

meet the standards set forth in *Wolicki-Gables*, *Medtronic Sprint Fidelis*, or *Funk*.

Whether any claim against a Trident System device can avoid preemption depends upon the cause of a particular failure and whether that failure plausibly arises from the violation of an identifiable federal standard that also supports a state law claim. Unfortunately, Plaintiff's allegations here are so general and so absent any reference to federal standards, that the Court has no basis for determining whether they plausibly assert "parallel" claims. Some courts have suggested that absent discovery, no plaintiff can reasonably be required to describe a federal standard violation. However, this Court disagrees that such a rule could apply in every instance. An abundance of cases and information describe the Trident System and its PMA approval process. From all of this information, Plaintiff could, with reasonable effort, make an attempt to describe the device defect and the federal requirement violated. Absent such an effort, the Court is left with a relatively easy decision.

Even after allowing an amendment, these claims lack sufficient facts to judge their plausibility. Indeed, Plaintiff's Amended Complaint does not require this Court to answer the more difficult issues which *Riegel* and subsequent cases have raised. Even under the most lenient *Bausch* standard, this complaint fails. In *Bausch*, the Seventh Circuit found a plausible claim in part because the plaintiff could point to an FDA investigation and warning related to her device, as well as Stryker's subsequent recall of the device used in her surgery. *Bausch*, 630 F.3d at 559. In his response to Stryker's motion here, Plaintiff does mention a 2008 recall of the cup component of a particular version of the Trident System. However, as Stryker points out in its reply memorandum, Plaintiff does not allege that the recall pertains to the particular device that was implanted in him. Indeed, given the timing of events, that is unlikely. Similarly, in

*Horowitz v. Stryker*, Judge Trager of the Eastern District of New York dismissed the plaintiff's claim because the plaintiff referenced a recall that was unrelated to the device at issue in that case. *See Horowitz v. Stryker Corporation*, 613 F.Supp.2d 271, 282 (E.D. N.Y. 2009). Plaintiff's pleadings cannot be said to plausibly suggest that Stryker has violated a federal standard that forms the basis of a state common law claim.

      The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record